[Cite as *Green Tree Servicing L.L.C. v. Hoover*, 2016-Ohio-1169.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| GREEN TREE SERVICING, LLC | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| KENNETH C. HOOVER, ET AL. | : | Case No. 2015CA00144 |
| | : | |
| Defendants-Appellants | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common
                            Pleas, Case No. 2013CV02820


JUDGMENT:                   Affirmed


DATE OF JUDGMENT:           March 21, 2016


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

DAVID J. DEMERS                         MICHAEL J. LUBES
MICHELLE L. POLLY-MURPHY                3200 West Market Street
3 North High Street                     Suite 106
P.O. Box 714                            Fairlawn, OH  44333
New Albany, OH  43054

*Farmer, P.J.*

{¶1} On October 29, 2013, appellee, Green Tree Servicing, LLC, filed a complaint in foreclosure against appellant, Catherine Hoover, and her now deceased husband, Kenneth Hoover, for failing to pay on a note secured by a mortgage. An amended complaint was filed on November 8, 2013. Appellant filed an answer and counterclaim on December 31, 2013. The counterclaim alleged wrongful foreclosure and truth in lending violations.

{¶2} The case was referred to mediation. While in mediation, appellant filed a complaint on May 5, 2014 in federal court against Bank of America, N.A., appellee's predecessor in interest to the subject loan (Case No. 14-CV-00975). The complaint alleged claims similar to those alleged in the instant case against appellee. The parties entered into a settlement agreement on August 12, 2014, and the complaint was dismissed with prejudice on August 18, 2014.

{¶3} Following a failed mediation, the instant foreclosure complaint was referred back to the trial court. Appellant filed an amended answer and counterclaim on September 29, 2014. The counterclaim dropped the previous allegations and alleged breach of contract and sought injunctive relief

{¶4} A bench trial commenced on March 20, 2015. The trial court stopped the trial for appellee to secure a witness from Bank of America, N.A. During appellee's efforts to secure a witness, appellee was made aware of the settlement agreement in the federal action.

{¶5} On May 29, 2015, appellee filed a request for expedited hearing to determine the applicability of the settlement agreement and release on the instant

complaint. A hearing was held on June 1, 2015. By order filed July 22, 2015, the trial court dismissed appellant's counterclaims, affirmative defenses, and defenses, finding the settlement agreement barred appellant's instant claims under the doctrine of res judicata. The trial court also issued a decree in foreclosure.

{¶6} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

I

{¶7} "THE TRIAL COURT ERRED WHEN IT GRANTED PLAINTIFF-APPELLEE'S MOTION TO DISMISS THE DEFENDANT-APPELLANT'S DEFENSES, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS AS WELL AS AWARDED THE PLAINTIFF-APPELLEE A DECREE IN FORECLOSURE WHERE THE PLAINTIFF-APPELLEE FAILED TO PROVE THAT THE SETTLEMENT AGREEMENT BARRED DEFENDANT-APPELLANT'S COUNTERCLAIMS, DEFENSES, AND AFFIRMATIVE DEFENSES UNDER THE DOCTRINE OF RES JUDICATA."

I

{¶8} Appellant claims the trial court erred in granting appellee's motion to dismiss her defenses, affirmative defenses, and counterclaim, and claims the doctrine of res judicata does not apply sub judice. We disagree.

{¶9} Appellant argues res judicata does not apply because the settlement agreement with appellee's predecessor in title in the federal action did not bar her defenses in the instant case, and the allegations in the counterclaim did not relate to the settlement agreement. In support of these positions, appellant directs this court to Section 2(T) of the settlement agreement which states the following in pertinent part:

T. Other Accounts/Future Events. ***To the extent that this Agreement keeps the Loan and underlying Note, Deed of Trust and/or Mortgage in force (as modified or otherwise herein), this Agreement shall not alter the rights, duties and obligations of said Loan by the Parties, including but not limited including but not limited (sic) to such actions as acceleration and foreclosure as may be appropriate in the event of a future default.

{¶10} In response, appellee argues the following language of Section 1(F) of the settlement agreement bars appellant's present claims:

F. PLAINTIFF Release. For consideration of the Payment, the receipt and sufficiency of which are hereby expressly acknowledged, the PLAINTIFF for herself and each of her present and former heirs, executors, administrators, partners, co-obligors, co-guarantors, guarantors, sureties, family members, spouses, attorneys, insurers, agents, representatives, predecessors, successors, assigns and all those who claim through them or could claim through them (collectively "Releasors") unconditionally and irrevocably remises, waive, satisfy, release, acquit, and forever discharge DEFENDANT and each of its present, former and future parents, predecessors, successors, assigns, assignees, affiliates, subsidiaries, divisions, departments, subdivisions, owners, partners, principals, trustees,

creditors, shareholders, joint ventures, co-ventures, officers and directors (whether acting in such capacity or individually), attorneys, vendors, accountants, nominees, agents (alleged, apparent or actual), representatives, employees, managers, administrators, and/or each person or entity acting or purporting to act for them or on their behalf, as well as any past, present or future person or any entity that held or holds any interests in the Loan(s) and the underlying Note, Deed, of Trust and/or Mortgage, including but not limited to Bank of America Corporation and all of its subsidiaries and affiliates (collectively the "Releasees"), and each of them respectively, from and against any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, set-offs, costs, losses, controversies, agreements, promises and demands, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, whether existing now or to come into existence in the future, arising at law or in equity, by right of action or otherwise, including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, claims and demands whatsoever that the Releasors, or their attorneys, agents, representatives, predecessors, successors and assigns, have or may have against the Releasees, for, upon, or by reason of any matter, cause or thing, whatsoever, in law or equity, including, without limitation, the claims made or which could have been made by the PLAINTIFF arising from the

origination or servicing of the Loan (in any manner) as well as in any way related to the underlying property, Notes, Mortgage and/or Deeds of Trust, any servicing act or omission thereon as well as any claim or issue which was or could have been brought in the Litigation (collectively "Released Matters").

{¶11} Both parties suggest this court examine appellant's September 29, 2014 amended answer and counterclaim in this case vis-à-vis the claims raised by appellant in the federal action that generated the settlement agreement.

{¶12} Appellant's amended answer included a general denial and a denial that appellee performed all of the conditions precedent in the mortgage. The affirmative defenses against appellee were: 1) failure to state a claim; 2) failure to name necessary parties; 3) appellee was not the real party in interest; 4) appellee lacked capacity and standing to sue; 5) appellee was not entitled to enforce the note against any party; 6) appellee was barred by the doctrines of waiver, laches, and estoppel; 7) appellee had unclean hands; 8) appellee engaged in deceptive practices; and 9) appellee failed to name the estate of Kenneth Hoover. The affirmative defenses against appellee and its predecessors were: 1) failure to give required notices pursuant to RESPA; 2) failure to response to a qualified written request under RESPA; 3) negligently failed to properly apply payments to the account; and 4) failure to mitigate damages.

{¶13} In her amended counterclaim, appellant alleged appellee and its predecessors refused and/or misapplied her monthly payments and breached the contract, and appellant referenced previous dismissals by appellee and its predecessors

in 2011 and 2013.   Appellant alleged breach of contract and sought injunctive relief. Appellant demanded the following in part:

C. For an order requiring the Plaintiff to show cause why it should not be enjoined from proceeding with the foreclosure of Hoover's home;

D. For an order requiring the Plaintiff to accurately credit all payments made by Mr. Hoover and/or Hoover and to modify the subject mortgage loan consistent with its representations and as required by contract and applicable federal law;

E. For an order of set off against any amount owed to the Plaintiff;

{¶14} The federal complaint filed against Bank of America, appellee's predecessor in interest, alleged breach of contract, RESPA violations, TILA violations, breach of fiduciary duty, lack of good faith and fair dealing, infliction of emotional distress, violations of the Fair Debt Collection Practices Act, violations of the Fair Credit Reporting Act, and failure to correct inaccurate reporting under §623(a)(2) of the FCRA and 15 U.S.C. section 1681s-2(A)(2).   Within the facts of the federal complaint are the following allegations:

44. Inconsistent with BOA's April 10, 2013 Notice and Green Tree's April 23, 2013 Notice (see Exhibits "C" and "D" hereto), BOA sent correspondence to Hoover dated May 5, 2013, wherein BOA advised Hoover that the "new Customer Relationship Manager at Bank of America,

N.A., your home loan servicer," was Ms. Trista Hines (emphasis added).  A true and correct copy of this letter is attached hereto and incorporated herein as Exhibit E.

45. BOA purports to have assigned the subject mortgage to Green Tree on or about May 16, 2013, which assignment was purportedly recorded nearly three months later on August 7, 2013 in the office of the Stark County Recorder as Instrument No. 201308070039207 (the "Assignment").

46. BOA continued to prosecute its second foreclosure action against Hoover in the State Court (Case No. 2012CV02090) and to defend the Hoover's counterclaim until the time of the joint dismissal entry on October 9, 2013, with no motion to substitute Green Tree as the party plaintiff and no appearance in the case by Green Tree.

47. In fact, at no time during the prior action was it ever mentioned by BOA'S counsel or by any BOA or Green Tree representative, either directly to Hoover or to the undersigned counsel, that Green Tree was the new owner and holder of the subject mortgage and/or promissory note.

{¶15} We note the instant complaint was filed on October 29, 2013, with an amended complaint filed on November 8, 2013, and appellant filed her federal action on May 5, 2014.  In the federal complaint, appellee was specifically referenced.  The settlement in the federal action was entered into on August 12, 2014, and appellant filed her amended answer and counterclaim in this case on September 29, 2014.

{¶16} In *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 1995-Ohio-331, syllabus, the Supreme Court of Ohio explained res judicata as "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." In *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008), the United States Supreme Court explained the following:

> The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata."** Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine,* 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id.,* at 748–749, 121 S.Ct. 1808. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 153–154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). (Footnote omitted.)

{¶17} Even though appellee was not named as a defendant in the federal complaint, the settlement agreement and release bound Bank of America's assigns. Appellant conceded appellee was an assign and was an assign during the federal action.

{¶18} As held by the *Taylor* court at 893-895:

Though hardly in doubt, the rule against nonparty preclusion is subject to exceptions. For present purposes, the recognized exceptions can be grouped into six categories.**

First, "[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement." 1 Restatement (Second) of Judgments § 40, p. 390 (1980) (hereinafter Restatement). For example, "if separate actions involving the same transaction are brought by different plaintiffs against the same defendant, all the parties to all the actions may agree that the question of the defendant's liability will be definitely determined, one way or the other, in a 'test case.' " D. Shapiro, Civil Procedure: Preclusion in Civil Actions 77–78 (2001) (hereinafter Shapiro). See also *California v. Texas,* 459 U.S. 1096, 1097, 103 S.Ct. 714, 74 L.Ed.2d 944 (1983) (dismissing certain defendants from a suit based on a stipulation "that each of said defendants…will be bound by a final judgment of this Court" on a specified issue).**

Second, nonparty preclusion may be justified based on a variety of pre-existing "substantive legal relationship[s]" between the person to be

bound and a party to the judgment. Shapiro 78. See also *Richards,* 517 U.S., at 798, 116 S.Ct. 1761. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor. See 2 Restatement §§ 43–44, 52, 55. These exceptions originated "as much from the needs of property law as from the values of preclusion by judgment." 18A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4448, p. 329 (2d ed.2002) (hereinafter Wright & Miller).**

Third, we have confirmed that, "in certain limited circumstances," a nonparty may be bound by a judgment because she was "adequately represented by someone with the same interests who [wa]s a party" to the suit. *Richards,* 517 U.S., at 798, 116 S.Ct. 1761 (internal quotation marks omitted). Representative suits with preclusive effect on nonparties include properly conducted class actions, see *Martin,* 490 U.S., at 762, n. 2, 109 S.Ct. 2180 (citing Fed. Rule Civ. Proc. 23), and suits brought by trustees, guardians, and other fiduciaries, see *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 593, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). See also 1 Restatement § 41.

Fourth, a nonparty is bound by a judgment if she "assume[d] control" over the litigation in which that judgment was rendered. *Montana,* 440 U.S., at 154, 99 S.Ct. 970. See also *Schnell v. Peter Eckrich & Sons, Inc.,* 365 U.S. 260, 262, n. 4, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961); 1 Restatement § 39. Because such a person has had "the opportunity to present proofs and

argument," he has already "had his day in court" even though he was not a formal party to the litigation. *Id.,* Comment *a,* at 382.

Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy. Preclusion is thus in order when a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication. See *Chicago, R.I. & P.R. Co. v. Schendel,* 270 U.S. 611, 620, 623, 46 S.Ct. 420, 70 L.Ed. 757 (1926); 18A Wright & Miller § 4454, at 433–434. And although our decisions have not addressed the issue directly, it also seems clear that preclusion is appropriate when a nonparty later brings suit as an agent for a party who is bound by a judgment. See *id.,* § 4449, at 335.

Sixth, in certain circumstances a special statutory scheme may "expressly foreclos[e] successive litigation by nonlitigants…if the scheme is otherwise consistent with due process." *Martin,* 490 U.S., at 762, n. 2, 109 S.Ct. 2180. Examples of such schemes include bankruptcy and probate proceedings, see *ibid.,* and *quo warranto* actions or other suits that, "under [the governing] law, [may] be brought only on behalf of the public at large," *Richards,* 517 U.S., at 804, 116 S.Ct. 1761. (Footnotes omitted.)

{¶19} We conclude res judicata applies based on the language of Section 1(F) of the settlement agreement, appellant's specific acknowledgment of appellee as an assign, the instant complaint preceded the federal action, and the similarity of the claims in the two cases.

{¶20} Upon review, we find the trial court did not err in dismissing appellant's defenses, affirmative defenses, and counterclaim.

{¶21} The sole assignment of error is denied.

{¶22} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Farmer, P.J.

Gwin, J. and

Delaney, J. concur.

SGF/sg 226